## Sponsorship Agreement

This Sponsorship Agreement ("**Agreement**") is dated December 9, 2024 (the "**Signing Date**") by and between Kadena LLC, a Connecticut limited liability company ("**Kadena**"), and Biznisport LLC., a Croatian limited liability company ("**Biznisport**"). Kadena and Biznisport may be referred to herein individually as a "**Party**" and collectively as the "**Parties**."

WHEREAS, Biznisport is the blockchain partner of the Croatian Football Federation ("**CFF**") and has the authority under the "Ugovor o licenciji", an Agreement dated 21 December 2021 (the "**Master Agreement**") to enter into exclusive or non-exclusive agreements for the grant or license of CFF or its affiliates intellectual property ("**CFF IP**"), including logos, tradenames and trademarks to be used for marketing or branding purposes, including with respect to blockchain-related assets;

WHEREAS, Kadena and its Affiliates have launched Kadena public blockchain platform (the "**Kadena Blockchain**") that has issued native digital assets/digital tokens popularly known as "Kadena" and that carry the trading symbol KDA ("**KDA**");

WHEREAS, Kadena and Biznisport now wish to enter into this Agreement to set out the terms and conditions upon which Biznisport is prepared to grant Kadena the sponsorship and other rights related to CFF; and

WHEREAS, initial capitalized terms not otherwise defined herein shall have the meaning assigned in Schedule 1 attached hereto.

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1. **Appointment and Grant of Sponsorship Rights**.

1.1    Subject to the terms and conditions of this Agreement and the payment of the Sponsorship Fee, Biznisport, as the duly authorized agent for CFF, hereby (a) appoints and designates Kadena as the official and exclusive Blockchain and cryptocurrency sponsor or partner of CFF and the Men's National Team, and (b) grants to Kadena the Sponsorship Rights on an exclusive and worldwide basis within each Product Category.

1.2    Except where expressly set out in Schedule 4 hereof, the nature, size, appearance, manner, positioning or prominence (as applicable) of any display rights or other benefits to be provided to Kadena as part of the Sponsorship Rights shall be determined jointly by the Parties, each acting in good faith, but shall not be less favorable than the rights afforded another partner or sponsor of CFF or the Men's National Team other than a Tier 1 Sponsor.

1.3    The Parties shall do and perform, or cause to be done and performed, and act in good faith in connection with, all such further acts and things, and shall execute and deliver all such further agreements, certificates, instruments and documents, as the other Party may reasonably request in order to carry out the intent and accomplish the purpose of this Agreement.

2.    **Sponsorship Fee**. In consideration of the rights granted hereunder, Kadena shall pay the Sponsorship Fee to Biznisport in accordance with this Section 2 and Schedule 7 hereof. At its option, Kadena can pay any installment of the Sponsorship Fee in KDA or in USDT or USDC or other stablecoin acceptable to Biznisport. The USD equivalency of each KDA so delivered shall be equal to the closing price of KDA as of the day immediately prior to the payment of any installment of the Sponsorship Fee as reported on CoinMarketCap or its successor. If CoinMarketCap is not reporting the closing price information for KDA, Biznisport and Kadena shall mutually determine in good faith

a substitute site that they believe provides reasonably representative information as to the closing price of KDA each day. Delivery of KDA or such stablecoin shall be to an account or wallet that supports KDA or such stablecoin, as the case may be, and that corresponds to the public key that Biznisport provides to Kadena in writing.

3. **Obligations of Biznisport.**

3.1    Biznisport shall, or shall cause any necessary parties (including CFF or the Men's National Team) to:

    3.1.1    provide, procure, facilitate, support or otherwise enable Kadena to, or allow Kadena to, exploit the Sponsorship Rights set forth in Schedule 3 or Schedule 4, all at no additional cost or charge to Kadena;

    3.1.2    obtain and maintain, at no additional cost or charge to Kadena, any requisite consent, permit, certificate, license, approval, permission or authorization from any government agency or authority of Third Party that is necessary or advisable for the provision, or Kadena's exploitation, of all of the Kadena Rights, including the rights under Section 1.1 hereof;

    3.1.3    obtain and maintain, at no additional cost or charge to Kadena, any and all applicable individual authorizations, licenses, permissions, waivers, consents and clearances in respect of use of the name, face or image of a person or other matter used in the Footage provided by Biznisport or CFF to Kadena;

    3.1.4    provide Footage in WEBP, JPG, JPEG, PNG, SVG or such other reasonable electronic file format as is mutually agreed to in good faith by Kadena and Biznisport and which file format is commonly used to automatically populate video images in an NFT.

3.2    During the Term and any applicable Renewal Term, Biznisport shall not, and shall not permit CFF or any other Person to, grant (i) any of the Designations or (ii) any of the Sponsorship Rights or substantially the same rights as the Sponsorship Rights in any Product Category, in each case to any other Person. Without limiting the scope of the immediately preceding sentence, neither Biznisport nor CFF shall, and neither shall permit any other Person to appoint or designate any other Person as an official or unofficial sponsor, partner, promoter (or words of similar import) in any Product Category with respect to CFF or the Men's National Team, or, subject to the compliance with the Right of First Refusal, any CFF Entity ( or any CFF Event.

3.3    Biznisport shall provide, or arrange to be provided by third parties, the software development services (the "**Development Services**") in order to (a) migration of Vatreni Tokens is to be agreed upon based on mutual agreement of potential usage of the bridge and (b) build and publicly launch a fan engagement website (the "**Platform**") that where appropriate will interact to record transactions on the Kadena Blockchain. The contemplated functional and nonfunctional requirements for the Platform and any requirements related to the migration of the existing Vatreni Tokens are set forth on, respectively, Schedules 5 and 6 attached hereto. Notwithstanding anything herein to the contrary, Biznisport will have exclusive control over (i) the manner and means of performing the Development Services, (ii) the testing and public launch of the Platform and (iii) the continued administration, maintenance and continued upgrading of the Platform. The Platform shall be the only officially recognized or sanctioned fan website or blockchain fan engagement platform by CFF or Biznisport.

3.4     During the Term and the Renewal Term (if applicable), Biznisport shall, at Biznisport's own expense, administer, maintain the Platform and make it reasonable available and accessible to the public via the internet. Biznisport shall ensure that the Platform continues to have current and relevant content related to the CFF and its teams (including the Men's National Teams).

3.5     During the Term and the Renewal Term (if applicable), the Platform shall only record transactions on Kadena Blockchain,unless mutually agreed in writting.

3.6     Upon written request from Kadena Biznisport shall search, select and provide Footage to Kadena (being an amount of Footage reasonably determined by Biznisport having consideration of requests made by Kadena). Kadena undertakes to use the Footage strictly in accordance with the terms and conditions set out in this Agreement and accordingly only in the form approved (in Biznisport's absolute discretion) and provided by Biznisport. Except as expressly permitted under this Agreement, Kadena undertakes not to wilfully exhibit, transmit or permit the transmission of, give, copy, loan, hire, license or sell the whole or any part of the Footage except to promote its relationship with CFF or as expressly permitted hereunder.

4.      **Obligations of Kadena**. During the Term, Kadena shall:

4.1     at its own expense, supply to Biznisport the finished digital artwork relating to Kadena Mark, in a suitable form and reasonably requested file format, for reproduction and use in all media, Promotional Material and advertising and any other elements referred to in Schedule 4 within any timelines reasonably notified to Kadena by Biznisport;

4.2     not use the CFF Mark, the Footage or any of the Sponsorship Rights in any joint promotion with any Third Party without the prior written approval of Biznisport; and

4.3     ensure that: (i) all Promotional Materials comply with Applicable Law; and (ii) no Promotional Materials will include anything that is derogatory or discriminatory to any minority groups or infringing of Third Party rights.

5.      **Warranties**.

5.1     Each Party represents and warrants to the other that:

      5.1.1     it has all necessary rights and authority to enter into this Agreement and to perform its obligations under this Agreement;

      5.1.2     it is not bound by any agreement with any Third Party, nor is there any litigation or legal proceeding which may adversely affect or conflict with this Agreement or a Party's ability to perform hereunder;

      5.1.3     it shall act in accordance with Applicable Laws in carrying out its obligations and exercising its rights under this Agreement;

      5.1.4     it shall use commercially reasonable efforts to cooperate with the other Party in a timely and professional manner; and

      5.1.5     it shall not use any of the rights and licenses granted in this Agreement in a manner which may injure, damage or bring into disrepute the public reputation, goodwill or favourable name or image of Kadena, Biznisport, the CFF or the Men's National Team, as the case may be.

5.2     Biznisport represents and warrants that:

5.2.1   CFF has been generally apprised of Sponsorship Rights being granted to Kadena by Biznisport hereunder and has been previously been provided a prior draft of the Agreement;

5.2.2   it has sufficient and adequate rights to the CFF Marks and Footage in order to grant, the Kadena Rights hereunder;

5.2.3   the grant of any of the Kadena Rights (including Kadena Sponsorship Rights) to Kadena does not (1) violate or conflict with, or exceed Biznisport's rights under the terms of the Master Agreement; or (2) other than the CFF Approval, require any consent or approval from any Person that has not been received as of the Effective Date or trigger any right of first refusal or similar right of any Person regarding any of the Kadena Rights; and

5.2.4   no Person other than Biznisport has the right to grant the Sponsorship Rights (or any similar rights) to any Person in the Product Category for any of the CFF Entities (including the Men's National Team), any CFF Competitions or any CFF Events.

6.   **Intellectual Property**.

6.1   Kadena acknowledges that all intellectual property rights (including trade mark rights, copyright and registered design rights) in the Footage, any CFF Mark, the Platform and any materials containing the Footage or CFF Mark (other than the CFF NFTs) and anything else licensed to Kadena pursuant to this Agreement shall remain, as between the Parties, both during the Term and thereafter the property of the applicable CFF Parties or Biznisport, as the case may be.

6.2   During the Term and the Renewal Term if applicable, Kadena hereby grants to Biznisport a non-exclusive, worldwide, royalty-free, sub-licensable right to use Kadena Marks solely and exclusively:

6.2.1   in connection with the delivery of Sponsorship Rights;

6.2.2   on merchandise and promotional items, if any, at Biznisport's discretion;

6.2.3   in advertising and promotional material and visual or audio-visual coverage relating to the CFF, the Men's National Team, the Vatreni Token or any Home Games;

6.2.4   on presentations and other similar materials to be used by Biznisport in procuring arrangements with its potential sponsors and other commercial sponsors or partners; and

6.2.5   on the official websites and applications of the CFF, the Men's National Team, the Vatreni Token and any other applicable websites or applications as may be requested by Kadena from time to time.

6.3   Kadena shall retain all intellectual property rights in Kadena Marks supplied to Biznisport under this Agreement, and such materials shall remain the sole and exclusive property of Kadena. As between the Parties, any goodwill arising out of use of Kadena Marks shall accrue for the benefit of Kadena and its Affiliates. Kadena warrants and represents that use of Kadena Marks by Biznisport in accordance with terms of this Agreement shall not infringe the rights, including any intellectual property rights, of any Third Party.

6.4     During the Term and the Renewal Term if applicable, Biznisport on behalf of CFF hereby grants to Kadena a non-exclusive, worldwide, royalty-free, right to use, reproduce or display the CFF Marks solely and exclusively in connection with or related to:

6.4.1     advertising and promoting the Kadena Services and the Kadena's Rights including the Sponsorship Rights and the Designations with respect to CFF and the Men's National Team and the relationship between Kadena and CFF or Biznisport including on Kadena's website, social media channels or promotional material; or

6.4.2     exercising the Kadena Rights.

7.     **Indemnity**.

7.1     Kadena shall indemnify Biznisport in respect of any and all liabilities, claims, proceedings, costs, damages, expenses (including reasonable legal costs and expenses) and losses suffered or incurred by Biznisport arising out of or in connection with (i) any breach by Kadena of any of its warranties, covenants or obligations under this Agreement; or (ii) any third party claims arising from the use of Kadena Marks in accordance with the terms of this Agreement; or (iii) the use by Kadena of the CFF Mark, the CFF Trademarks or any of the Sponsorship Rights other than strictly in accordance with this Agreement.

7.2     Biznisport shall indemnify Kadena in respect of any and all liabilities, claims, proceedings, costs, damages, expenses (including reasonable legal costs and expenses) and losses suffered or incurred by Kadena arising out of or in connection: (i) any breach by Biznisport of any of its warranties, covenants or obligations under this Agreement; (ii) any third party claims arising from the use of Kadena Marks not in accordance with the terms of this Agreement; (iii) the use by Kadena of the CFF Marks, the CFF Trademarks or the Footage or the exercise of the Sponsorship Rights by Kadena in accordance with this Agreement (iv) the Development Services; (v) the Migration; or (vii) the development, administration, maintenance or continuing operation of the Platform.

7.3     Notice by a Party (a "**Claiming Party**") making a claim (a "**Claim**") for indemnification under this Agreement shall be promptly made to the other Party (the "**Indemnifying Party**") after the Claiming Party has reasonable notice or actual knowledge of facts, circumstances, events or conditions that have resulted, or are reasonably expected to result, in a Claim. The Indemnifying Party shall have the right to assume and control the defense of the Claim that is brought by a third party against a Claiming Party (a "**Third Party Claim**") including selecting legal counsel to defend the Claiming Party provided, however, that Claiming Party may, at its own expense, use its own counsel and participate in such defense. The Parties shall reasonably cooperate in defending any Third Party Claim.

8.     **Term and Termination**.

8.1     Unless terminated earlier in accordance with the terms of this Agreement, the term of this Agreement (the "**Term**") shall commence on the Effective Date and shall expire upon the later of (i) the final match of the 2028 UEFA European Men's Football Championship or (ii) if Men's National Team is in the final match of the 2028 UEFA European Men's Football Championship, sixty (60) after the date of such match.

8.2     If Biznisport does not provide a ROFR Notice to Kadena at least sixty (60) days prior to the end of the Term or unless Kadena notifies Biznisport no later than 30 days after the expiration of the Term that it does now want to extend this Agreement, then this Agreement shall automatically, and without any action on the part of either Party, be extended through the end of the 2030 World Cup (the "**Renewal Term**") on the same terms and conditions except that

during the Renewal Term the Sponsorship fee shall be $350,000 payable on each January 1 and July 1 occurring during the Renewal Term. For the avoidance of doubt, during any Renewal Term, Kadena shall retain its Right of First Refusal.

8.3     Either Party may terminate this Agreement with immediate effect at any time by giving written notice to the other Party if:

8.3.1     the other Party is in breach of a material obligation under this Agreement, which breach, if capable of remedy, has not been remedied within fifteen (15) days after such Party has served written notice on the other Party specifying the breach and the steps required to remedy it;

8.3.2     an order is made or a resolution is passed for the winding-up of another Party; or an order is made for the appointment of an administrator to manage the affairs, business and property of another Party; or a receiver or manager or administrative receiver is appointed in respect of all or any of another Party's assets or undertaking; or circumstances arise which entitle the court or a creditor to appoint a receiver or manager or administrative receiver or which entitle the court to make a winding-up or bankruptcy order; or that Party takes or suffers any similar or analogous action in consequence of debt;

8.3.3     any law or regulation goes into effect that prohibits or materially limits or restricts either Party from obtaining the realization of the intended benefits of, or providing the rights, designation or sponsorship under, this Agreement including prohibiting the owning, trading, exchanging, or holding of cryptocurrency in Croatia or the sponsorship of the CFF or the Men's National Team;

8.3.4     an Event of Force Majeure lasts for more than 180 consecutive days; or

8.3.5     the other Party ceases or announces the intended cessation of the active conduct of its operations.

8.4     Without prejudice to its other rights or remedies under this Agreement, Biznisport shall have the right to terminate this Agreement immediately by written notice to Kadena if (i) Kadena engages in any deceptive, misleading, unethical, illegal, fraudulent or other practice or acts, or act that (ii) might reasonably be considered or expected to materially injure, tarnish, damage, bring into disrepute or otherwise negatively affect the reputation and goodwill associated with Biznisport, CFF or the Men's National Team.  For the avoidance of doubt, the right under this Section 8.4 is in addition to, and not in lieu or limitation of, Biznisport's rights to declare an Event of Force Majeure.

8.5     Without prejudice to its other rights or remedies under this Agreement, Kadena shall have the right to terminate this Agreement and its obligations hereunder immediately by written notice to Biznisport if (i) Biznisport, CFF, a CFF Entity, the Men's National Team or a coach, player, or manager thereof (a) engages in any deceptive, misleading, unethical, illegal, fraudulent or other practice or act or any immoral, deceptive, scandalous or obscene act or act that (b) might reasonably be considered or expected to materially injure, tarnish, damage, bring into disrepute or otherwise negatively affect the reputation and goodwill associated with Kadena or the Brands or (ii) the 2026 World Cup or the 2028 UEFA European Football Championship (or the 2030 World Cup with respect to the Renewal Term) is cancelled or Men's National Team announces that it will not participate or play in either the 2026 World Cup or the 2028 UEFA European Football Championship (or the 2030 World Cup with respect to the Renewal Term). For the avoidance of doubt, the right under this Section 8.5 is in addition to, and not in lieu or limitation of, Kadena's rights to declare an Event of Force Majeure.

8.6     Upon expiry or the effective date of any earlier termination by Biznisport of this Agreement, except as set forth in this Section 8.6, Kadena shall immediately cease its exercise of the Sponsorship Rights including the creation and use of Promotional Materials and cease and desist from using the CFF Mark but no such expiration or other termination shall affect, impact or terminate any right of a holder of a CFF NFT.

8.7     In the event of a material breach or violation by Biznisport of any of its obligations hereunder or any expiration or termination of, or any material default, violation or default by Biznisport under, the Master Agreement, and without limiting any of other rights or remedies of Kadena hereunder,  Kadena may, but shall have no obligation to, directly recognize CFF as the party providing the substantive rights under this Agreement including the Sponsorship Rights, and pay any remaining installments of the Sponsorship Fee directly to CFF pursuant to written instructions provided by CFF to Kadena.

8.8     The expiration or termination of this Agreement shall not affect Sections 6 through 21 and any other provision of this Agreement which is expressly or impliedly intended to survive the expiry or termination of this Agreement and any rights that have accrued up to the date of termination shall not be affected.

9.      **Right of First Refusal**.

9.1     If, at any time prior to the end of the Term or the Renewal Term, as applicable, Biznisport or CFF has a bona fide intention to enter into any new agreement, contract, commitment or understanding which provides to any other Person any or all of the rights (or substantially similar rights) or the Designations granted under this Agreement whether with respect to the Men's National Team, the Women's National Team, or any other CFF Entity, any CFF Competition or any CFF Event, (such agreement, contract, commitment or understanding, a "**Proposed Agreement**"), then Biznisport shall provide written notice to Kadena ("**ROFR Notice**") which ROFR Notice shall include a copy of the Proposed Agreement, then Kadena shall, for a period of thirty (30) days after Kadena's receipt of the ROFR Notice (the "**Exercise Period**"), have the right, but not the obligation, to accept the Proposed Agreement or, in the event that certain of the proposed terms are not compatible with Kadena's infrastructure or technology, on substantially similar terms, except with respect to any economic terms of the Proposed Agreement.  Kadena's rights under this Section 9.1 shall be referred to as the "**Right of First Refusal**".

9.2     In the event that Biznisport enters into any Proposed Agreement with any Person other than Kadena other than pursuant to the conditions of this Section 9, Biznisport's breach of this Section 9 would result in substantial harm to Kadena for which monetary damages alone could not adequately compensate. Therefore, the Parties hereto unconditionally and irrevocably agree that Kadena shall be entitled to seek protective orders, injunctive relief and other remedies available at law or in equity (including, without limitation, seeking specific performance or the rescission of any such agreement, contract, commitment or understanding not entered into in strict compliance with this Section 10) without the posting of any bond or security.

10.     **CFF Approval**

10.1    With the exception of Sections 10.1, 10.2, and 12 through 21 hereof, the respective rights and obligations of the Parties hereunder, is conditioned upon, and shall not become effective until, the CFF Approval is received. Promptly after the execution of this Agreement, Biznisport shall formally request and pursue with due diligence receipt of the CFF Approval and shall keep Kadena reasonably advised of the progress of obtaining such approval including providing copies of the proposed form of the CFF Approval.  For the avoidance of doubt: (1) Kadena shall not be entitled to exploit any of the Sponsorship Rights (including announcing the existence of

the relationship set out in this Agreement); (2) Kadena shall not be under any obligation to pay any installment of the Sponsorship Fee; and (3) Biznisport shall not be required to grant any of the Sponsorship Rights; in each case until the Effective Date. Notwithstanding the foregoing, in the event that CFF Approval is not received within ten (10) business days after the Signing Date, Kadena shall have a continuing, unilateral right until it receives a duly executed and acceptable copy of the CFF Approval to terminate this Agreement without any further obligation owed by Kadena to Biznisport or any other Person. If Kadena terminates this Agreement under this Section 10.1, Biznisport shall promptly (but in no event more than ten (10) business days after receipt of Kadena's notice of termination) reimburse Kadena for any and all legal fees and other expenses incurred in connection with, or related to, this Agreement or the CFF Approval.

10.2    Furthermore, in consideration of the expenses that Kadena has incurred and will incur in connection with negotiating this Agreement, Biznisport hereby agrees that between the Signing Date and the Effective Date (unless earlier terminated in accordance with Section 10.1) (the "**Exclusivity Period**"), Biznisport will not, directly or indirectly, through any Representative, Affiliate, advisor or other Person of Biznisport, or otherwise, take any action to solicit, initiate, seek, entertain, recommend or knowingly encourage any inquiry, proposal or offer from, furnish any information to, or participate in any negotiations with, any Person regarding the grant of any of Kadena Rights or any of the Designations whether with respect to the Men's National Team, the Women's National Team, or any other CFF Entity, any CFF Competition or any CFF Event (each an "**Alternative Transaction**"). Biznisport agrees that in no event will Biznisport accept or enter into any Alternative Transaction during the Exclusivity Period and shall notify Kadena of any inquiry or solicitation regarding any Alternative Transaction.

11.    **Force Majeure**.

11.1    If an Event of Force Majeure occurs that prohibits or delays performance by a Party under this Agreement or limits or affect the practical realization of the benefits of this Agreement intended to be afforded to such Party under this Agreement, the obligations of the Parties to perform under this Agreement may be suspended upon notice provided under Section 11.2 hereof.  For the avoidance of doubt, Biznisport shall have no right to declare an Event of Force Majeure related to Biznisport's breach, violation or failure under Master Agreement or the termination or expiration of the Master Agreement but Kadena can declare an Event of Force Majeure related to Biznisport's breach, violation or failure under Master Agreement or the termination or expiration of the Master Agreement.

11.2    A Party who believes an Event of Force Majeure has occurred and it will be negatively affected by such Event of Force Majeure and wants to suspend performance under Section 11.1 shall: (a) notify the other Party of the nature, extent, effect and likely duration of the circumstances constituting the Event of Force Majeure; (b) use reasonable endeavours to minimise the effect of the force majeure on its performance of its obligations under this Agreement; and (c) shall immediately after the Event of Force Majeure has ended notify the other Party and resume full performance of its obligations under this Agreement.

11.3    Notwithstanding Section 11.1 hereof, Kadena shall have no right to declare and terminate this Agreement in the event that any individual match or game is suspended or unable to be played due to an Event of Force Majeure. In such circumstances the Parties shall discuss with the intention of agreeing (both acting reasonably and in good faith) alternative rights that will be granted to Kadena.  In the Event of a Force Majeure and notwithstanding anything herein to the contrary, the Term of this Agreement and all other dates hereunder (including payment of the installment of the Sponsorship Fee) shall be automatically extended by the duration of such Event of Force Majeure and the dates of payment of the Sponsorship Fees be equitably extended.

12.    **Press Release: Confidentiality**. The Parties shall cooperate in good faith in a press release announcing the sponsorships and designations under this Agreement. Such release shall be promptly issued after the receipt of the CFF Approval. The Parties acknowledge that during the Term or Renewal Term they will exchange certain confidential information such as the terms of this Agreement and confidential information regarding their respective businesses, finances, revenue, services and products ("**Confidential Information**"). Each Party shall treat all Confidential Information as confidential, will use such information only as is necessary for the purposes of performing this Agreement and will not disclose such information to any Third Party, either during the Term or thereafter, without the prior written consent of the other Party, other than: (a) as required by law, a court of competent jurisdiction or any governmental or regulatory authority; or (b) to employees, officers, representatives, advisers or affiliates on a 'need to know' basis for the purposes of the evaluation of this Agreement and who have agreed prior to the date of disclosure to be bound by obligations of confidentiality no less stringent than those contained in this Agreement.

13.    **Independent Contractor Relationship**.  Biznisport's relationship with Kadena is that of an independent contractor, and nothing in this Agreement is intended to create, or should be construed as creating, any partnership, agency, joint venture or employment relationship between Kadena and Biznisport or any of Biznisport's employees, representatives or agents. Each Party shall be responsible for its own taxes to any governmental authority provided, however, Biznisport shall be responsible to pay any all sales, use, value add, service or other taxes or assessment related to any payment to it hereunder.  Neither Party shall be liable for the other Party's debts, obligations or other liabilities, nor is either Party authorized to make any representation, contract or commitment on behalf of the other Party or to otherwise bind the other Party.

14.    **Successors and Assigns**.  Biznisport may not subcontract or otherwise delegate or assign this Agreement or any of Biznisport's obligations under this Agreement without Kadena's prior written consent, which may be withheld in Kadena's sole discretion.  Kadena shall not, other than to an Affiliate, assign or sub-license any of its rights under this Agreement, or delegate or subcontract any of its obligations under this Agreement, without the prior written approval of Biznisport. Any attempted assignment in violation of the foregoing shall be null and void. Subject to the foregoing, this Agreement will be for the benefit of Kadena's successors and assigns and will be binding on Biznisport's permitted assignees. Other than as set forth herein, no provision of this Agreement will create any Third Party beneficiary, employment or other rights in any other Person.

15.    **Notices**.  All notices, consents, waivers, and other communications under this Agreement must be in writing and will be deemed to have been duly given by a Party when (i) delivered by hand (with written confirmation of receipt), (ii) transmitted by email (provided that such notice is correctly addressed and that the sender does not receive an out-of-office, bounce back message or similar automated response to the other Party's email address set forth on the signature page) or (iii) three (3) business days after being sent  if sent by a recognized express delivery service such as FedEx or DHL, and addressed to such other Party at its address set forth on the signature page hereof.  Any notice sent by email shall be followed up with a copy sent to the addressee by recognized international express delivery service.  Either Party can change its respective address by notice to the other of such change provided in accordance with this Section 15.

16.    **Governing Law; Jurisdiction.**.  The validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws.  The state and federal courts located in the Southern or Eastern District of the State of New York. County of New York shall have the exclusive jurisdiction to hear and resolve any and all disputes, claims or litigation related to this Agreement or the transactions contemplated hereby and Kadena and Biznisport each consents and submits to personal jurisdiction in any such court and waives to the fullest extent permitted by law any objection that either party may now or hereafter have to the venue of any such litigation, proceeding or action in any such

court or that any such litigation, proceeding or action was brought in an inconvenient forum. Any legal action or proceeding shall be conducted in English. Service of process of any complaint or summons to commence a legal action or proceeding may be made via the methods set forth in Section 15(iii) and each Party expressly agrees to such service of process.

17.     **Severability**. Should any provisions of this Agreement be held by a court of law to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby and all such other provisions shall remain in full force and effect. If any provision of this Agreement is held to be excessively broad, it shall be reformed and construed as necessary to limit and reduce it so as to be enforceable to the maximum extent permitted by law.

18.     **Delay; Waiver**. No delay or omission by either Party in exercising any right under this Agreement shall operate as a waiver of that or any other right. A waiver or consent by a Party on any one occasion shall be effective only in that instance and shall not operate or be construed as a waiver or consent on any other occasion. No course of dealing will be deemed effective to modify or amend any part of this Agreement or any rights or obligations of any party under or by reason of this Agreement.

19.     **Remedies.** Biznisport's obligations under this Agreement are of a unique character that gives them particular value; breach of any of Biznisport's obligations will result in irreparable and continuing damage to Kadena for which there will be no adequate remedy at law. Accordingly, in the event of such breach or threatened breach, Kadena will be entitled to injunctive relief and/or a decree of specific performance, and such other and further legal and equitable relief as may be proper (including monetary damages if appropriate), without the necessity of posting any bond or other security. The rights and remedies hereunder are not exclusive and are in addition, to any other rights and remedies that exist at law or equity. Under no circumstances or events shall Kadena's liability to Biznisport hereunder or related to the transactions contemplated hereby exceed the aggregate amount of unpaid Sponsorship Fees.

20.     **Entire Agreement**. This Agreement constitutes the entire agreement between the parties relating to this subject matter and supersedes all prior or contemporaneous oral or written agreements concerning such subject matter. This Agreement may only be changed or amended by mutual agreement of authorized representatives of the parties in writing. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which taken together shall be deemed to be one instrument. A facsimile copy, PDF copy or electronic signature of this Agreement shall constitute an original document and shall be deemed to be an original signature, and pdf, email or other electronic transmissions of any executed counterpart of this Agreement and/or retransmission of any executed facsimile, pdf or other executed document shall be deemed to be the same as the delivery of an executed original.

21.     **Interpretation**. The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent and no rule of strict construction shall be applied against any party. The headings contained in this Agreement are included for purposes of convenience only, and do not affect the meaning or interpretation of this Agreement. Unless otherwise expressly specified in this Agreement: (i) the words "hereof", "hereby", "herein" and "hereunder," and correlative words, refer to this Agreement as a whole and not any particular provision; (ii) the words "include", "includes" and "including", and correlative words, are deemed to be followed by the phrase "without limitation"; (iii) the word "or" is not exclusive and is deemed to have the meaning "and/or"; (iv) words using the singular or plural number shall also include the plural or singular number, respectively; (v) the masculine, feminine or neuter form of a word includes the other forms of such word and the singular form of a word includes the plural form of such word; (vi) a reference to any statute or statutory provision shall be construed as a reference to the same as it may have been, or may from time to time be, amended, modified or re-enacted; (vii) all references to "dollars" or "$" will be deemed references to the lawful money of the United States of America; (viii) all references herein to Articles, Sections,

Exhibits and Schedules will be deemed references to Articles and Sections of, and Exhibits and Schedules to, this Agreement unless the context will otherwise clearly require; and (ix) references to a Party shall include their permitted successors and assigns thereof.

*[remainder of page intentionally left blank; signature page follows]*

**IN WITNESS WHEREOF,** the parties have executed this Sponsorship Agreement as of the day and year first above written.

**KADENA**:

Kadena LLC

By: _Stuart Popejoy_
Name:  Stuart Popejoy
Title:   CEO


**Address**:
142 Lafayette Street, PO #4
Newark, NJ 07105

**E-mail address for notices**:
stuart@kadena.io    and
legal@kadena.io

**BIZNISPORT:**

Biznisport, Ltd.

By: _Ivan Cubela_
Name:  Ivan Cubela
Title:   Director


**Address**:
Korčulanska ulica 2
10 000 Zagreb, Croatia

**E-mail address for notices**:
ivancubela@biznisport.com

**Schedule 1**
**Definitions**

In this Agreement and the Schedules, the following expressions shall have the meanings set opposite them unless the context otherwise admits:

| | |
|---|---|
| **Affiliate** | means, with respect to any Person, any other Person, directly or indirectly, Controlling, Controlled by or under Common Control with such Person and any officer, director or Controlling Person of such Person. |
| **Agreement** | has the meaning assigned to it in the preamble. |
| **Alternative Transaction** | has the meaning assigned to it in Section 10.2. |
| **Applicable Laws** | means all regional, national and international laws, regulations and codes of practice (including all those relating to product safety, cryptocurrencies, blockchain, NFTs, data protection, data privacy, advertising, and anti-bribery and corruption) applying to the person or circumstances in question including any standards or rules imposed by any governmental or regulatory authorities, irrespective of where such laws, regulation, codes or standards might be imposed. |
| **Biznisport** | has the meaning assigned to it in the preamble. |
| **Brands** | means the "Kadena" brand as any future brand that Kadena uses in the ordinary course of business and is reasonable acceptable to Biznisport and CFF. |
| **CFF** | has the meaning assigned to it in the Recitals. |
| **CFF Approval** | means a letter or other communication from CFF to Biznisport or Kadena that satisfies the criteria in <u>Schedule 9</u> hereto and otherwise is in form and substance acceptable to Kadena. |
| **CFF Competitions** | means any competition or event that CFF hosts or organizes (either solely, jointly or in conjunction with others) for any of the CFF Entities or for any other soccer or football team. |
| **CFF Entities** | means each team owned or controlled, in each case in whole or in part, by or connected with CFF, including each of the Women's National Team and each youth team or league listed on CFF's website located at https://hns.family/en/. |
| **CFF Events** | means any CFF Competitions and any other events (whether live, in person or online) that CFF hosts or organizes (either solely, jointly or in conjunction with others). |
| **CFF Mark** | means the names and logos owned or controlled (in whole or in part) by CFF, the Men's National Team, or any CFF |

Competitions or CFF Entities and depicted in <u>Schedule 2</u> as the same may be modified or replaced by each respective owner or controller in its discretion including any new, substitute or replacement versions for the names and logos set forth on <u>Schedule 2</u> or any rebranding or relaunch thereof.

**CFF IP**                     has the meaning assigned to it in the Recitals.

**CFF NFTs**                   means the NFT's bearing or related to the CFF or the Men's National Team or any CFF Entity or created in connection with any CFF Event or any merchandise or tickets for the Men's National Team events.

**CFF Parties**                means, collectively, the CFF, the CFF Entities and the Men's National Team.

**CFF Trademarks**             means any trade mark(s) (whether registered or unregistered), trade name(s), word(s), design(s), logo(s), symbol(s) and device(s) of or relating to CFF, the Men's National Team, a CFF Event, a CFF Competition or CFF Entity.

**Claim**                      has the meaning assigned to it in Section 7.3.

**Claiming Party**             has the meaning assigned to it in Section 7.3.

**Competitor**                 means any Person (including its Affiliates or affiliated foundation) whose primary business, operations, activity, product or service offering relates to the creation, operation and supply or sale of any products or services in a Product Category including the maintenance or promotion of any L1 or L2 public or private blockchain or the issuance, minting, purchase, sale or exchange of NFTs, cryptocurrency or other digital assets.

**Confidential Information**   has the meaning assigned to it in Section 12.

**Control** (including the terms "Controlling" "Controlled by" and "under Common Control with")     means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

**Copyrights**                 means all copyrights, whether in published or unpublished works, databases, data collections and rights therein, mask work rights, Software, web site content. rights to compilations, collective works and derivative works of any of the foregoing and moral rights in any of the foregoing. registrations and applications for registration for any of the foregoing and any renewals or extensions thereof. and moral rights and economic rights of others in any of the foregoing.

| | |
|---|---|
| **Designations** | means any and all designations as set forth on <u>Schedule 3</u> or any derivatives or variations thereof. |
| **Development Services** | has the meaning assigned to it in Section 3.3. |
| **Effective Date** | means the date that Biznisport confirms in writing to Kadena that it has received a fully executed CFF Approval. |
| **Exclusivity Period** | has the meaning assigned to it in Section 10.2. |
| **Exercise Period** | has the meaning assigned to it in Section 9.1. |
| **Event of Force Majeure** | means  the existence or occurrence of any condition, circumstance or event that is beyond the reasonable control of a Party, including an act of God, compliance with any law or governmental order, rule, regulation or direction (unless covered by Section 8.3.3), epidemic or pandemic (including the Covid-19 pandemic and any restrictions arising out of it including restrictions or limitations on travel, participation in matches or fames or fan attendance at sporting events) war, riot, civil commotion or insurrection, malicious damage, fire, flood, accident, storm, breakdown of plant or machinery, default of suppliers or sub-contractors, embargo, strikes lock-outs or other industrial disputes (whether or not relating to that Party's workforce) or acts of terrorism. . |
| **Footage** | means any still or live photograph, video or audio footage featuring a CFF Event or the Men's National Team in any and all mediums including television, radio, internet or metaverse. |
| **Home Game** | means a football game in which the Men's National Team is deemed the "host" or "home team" or which is held in Stadion Maksimir or other stadium or venue in Croatia. |
| **Indemnifying Party** | has the meaning assigned in Section 7.3. |
| **Intellectual Property** | means Copyrights, domain names, patents, Trademarks and trade secrets. |
| **Kadena** | has the meaning assigned to it in the preamble. |
| **Kadena Blockchain** | has the meaning assigned to it in the Rectials. |
| **Kadena Logo** | means the logos set out in <u>Schedule 8</u> or any future logo that Kadena uses in the ordinary course of business and is reasonable acceptable to Biznisport and CFF. |
| **Kadena Marks** | means the Brand and marks set out in <u>Schedule 8</u> or any future mark that Kadena uses in the ordinary course of business and is reasonable acceptable to Biznisport. |

| **Kadena Rights** | means, collectively, the Sponsorship Rights and all rights granted to Kadena hereunder. |
| **Kadena Services** | means services or goods of Kadena which: (i) fall within the Product Category. or (ii) bear or are marketed exclusively under any of Kadena Marks. |
| **KDA** | has the meaning assigned to it in the Recitals. |
| **Master Agreement** | has the meaning assigned to it in the Recitals. |
| **Men's National Team** | means the Men's Football Team for the country of Croatia that competes in the World Cup and Euro Cup events and qualifiers and friendlies related thereto. |
| **Migration** | has the meaning assigned to it in <u>Schedule 5</u>. |
| **NFTs** | means a unique digital identifier that is recorded on Kadena Blockchain and certifies the authenticity and ownership of certain rights and which type of identifier is commonly referred to as non-fungible token. |
| **Party or Parties** | has the meaning assigned to it in the preamble. |
| **Person** | means any individual, sole proprietorship, partnership, limited partnership, corporation, limited liability company, unincorporated society or association, trust, joint venture or other entity, including any governmental authority. |
| **Platform** | has the meaning assigned to it in Section 3.3. |
| **Product Category** | means all Blockchain related technology or services including public or private blockchain, crypto-currency. |
| **Promotional Materials** | means any promotional, advertising or other marketing materials, in any media or format, created, developed or used by Kadena in connection with the exercise of the Sponsorship Rights pursuant to this Agreement. |
| **Proposed Agreement** | has the meaning assigned to it in Section 9.1. |
| **Public Launch** | has the meaning assigned to it in <u>Schedule 6</u>. |
| **Renewal Term** | has the meaning assigned to it in Section 8.2. |
| **Representative** | means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors, counsel, accountants and other agents of such person. |
| **Restricted Third Party** | has the meaning assigned to it in Section 3.2. |
| **Right of First Refusal** | has the meaning assigned to it in Section 9.1. |

| | |
|---|---|
| **ROFR Notice** | has the meaning assigned to it in Section 9.1. |
| **Signing Date** | has the meaning assigned to it in the preamble. |
| **Sponsorship Fee** | has the meaning assigned to it in <u>Schedule 7</u>. |
| **Sponsorship Rights** | means the package of rights, designation and benefits granted to Kadena pursuant to this Agreement, as set out in Section 1.1 of the Agreement or in <u>Schedule 3 or 4</u>. |
| **Term** | has the meaning assigned to it in Section 8.1. |
| **Third Party** | means any Person (including any Representative) who is not a Party to this Agreement or an Affiliate of a Party to this Agreement. |
| **Third Party Claim** | has the meaning assigned to it in Section 7.3. |
| **Tier 1 Sponsor** | means any of Nike, Ožujsko, PBZ, T-COM, Croatia Airlines, Jana, Petrol, PSK, HEP or Konzum or any other similarly prominent sponsor or partner. |
| **Trademarks** | means trademarks, service marks, fictional business names, trade names, commercial names, certification marks, collective marks, and other proprietary rights to any words, names, slogans, symbols, logos, devices or combinations thereof used to identify, distinguish and indicate the source or origin of goods or services. registrations, renewals, applications for registration, equivalents and counterparts of the foregoing. and the goodwill of the Business associated with each of the foregoing. |
| **Vatreni Tokens** | The Croatian FF Fan Token, popularly known as, and which carries the trading symbol, "Vatreni". |
| **Women's National Team** | means the Women's Football Team for the country of Croatia that competes in the World Cup and Euro Cup events and qualifiers and friendlies related thereto. |

## <u>Schedule 2</u>
### CFF Marks

Those marks set forth at: https://hns.family/mediji/logotipi/

**Schedule 3**
**Designations**

The right to use the followings designation and any combination or derivatives thereof and such other designation(s) that the Parties mutually agree in writing:

1.1    "Official Blockchain Partner of the Croatian Football Federation"

1.2    "Official Blockchain Sponsor of the Croatian Football Federation"

1.3    "Official Cryptocurrency Partner of the Croatian Football Federation"

1.4    "Official Cryptocurrency Sponsor of the Croatian Football Federation"

1.5    "Official Blockchain Partner of the Vatreni"

1.6    "Official Blockchain Sponsor of the Vatreni"

1.7    "Official Cryptocurrency Partner of the Vatreni"

1.8    "Official Cryptocurrency Sponsor of the Vatreni"

**Schedule 4**
**Sponsorship Rights**

1.    **Signage and Branding Rights**

1.1    The right to have one of Kadena Marks displayed on CFF's website and mobile application and Vatreni Token website and mobile application (as applicable). The Kadena Mark shall be displayed on the top row of the area on CFF's website where other sponsors/partners are listed. Such display shall link to the official website of Kadena. Placement of Kadena Mark on the other websites/mobile applications shall be similar to and no less prominent than the marks of other partners/sponsors.

1.2    The right to have one of Kadena Marks included in a press release announcing the relationship hereunder, such press release to be agreed by the Parties in writing prior to the effective date of this Agreement.

1.3    "Powered by Kadena" shall be listed on the profile page of all Vatreni-related social media platforms and on the Vatreni website and mobile application.

1.4    Visible promotion of Kadena at all CFF Events with the Designations. Specific details to be negotiated in good faith as between the Parties.

1.5    The Kadena Logo shall be prominently featured on the exterior of the sleeve of any and all official team training/warmup gear which is allowed by the existing rules of the CFF, the same as the other designated sponsors, which is to be worn upon entrance into any stadium and used during warmup on field for the game. The size of such logo shall be determined by the Parties based on their reasonable good faith determination. No logo, trademark, or other unique identifying information of any other Person shall obstruct or otherwise lessen the prominence of the Kadena Logo.

1.6    During each Home Game Kadena shall receive four (4) ads of at least a thirty (30) second duration on the stadium's 360 degree LED ribbon, which LED ribbon shall be at the field level and around the field, unless not possible due to stadium restrictions, renovations, or specifications, in which case the Parties shall negotiate in good faith on an alternate, but equally valuable, location for Kadena's ads to run or other right. The ad shall be video based and audio (if possible), and any such audio shall be translated to Hrvatski (Croatian).

1.7    Kadena mentioned as the "presenting sponsor" of a fan engagement or football action scoreboard feature for 1 Home Game or other "day of game" promotional opportunities, if technically possible, and in good faith agreed.

2.    **Digital and Social Rights Granted to Kadena**

2.1    The right to create a thirty (30) second commercial that will be featured and played not less than two times (2x) per event on the main LED screen at each home game for the Men's National Team. Biznisport shall review any translation to Hrvatski (Croatian) and confirm the "nativity" of such translation. The content of such commercial shall be subject to Biznisport's reasonable approval.  Such commercial may contain and display Footage or CFF Marks.

2.2    The right to publish, with the publisher(s) of Kadena's choice, two (2) joint PR articles about the sponsorship during each calendar year of the Term. Both such articles per year shall be initially authored by Kadena and shall highlight Kadena. Biznisport shall be responsible for translating each such article into Hrvatski (Croatian) not more than fifteen (15) days after receiving the final English language version of each such article from Kadena. The timing and location(s) of such publishing shall be determined by Kadena in its reasonable discretion. The

content of any such articles shall be subject to the approval of both Kadena and Biznisport. Biznisport shall review any translation and confirm the "nativity" of such translation.

2.3     Posts on social media channels/pages/accounts:

    2.3.1     1 social post per game on each of the CFF's social channels (Instagram, X, Facebook) and Vatreni socials.

    2.3.2     1 'featured' unit on CFF's social channels posted twice per month ("powered by Kadena").

    2.3.3     2 reshares/reposts each month from each CFF social channel, the content of which shall be determined by Kadena.

    2.3.4     4 reshares/reposts each month from each Vatreni-related social channel, the content of which shall be determined by Kadena.

2.4     CFF shall send out email blasts on Kadena's behalf for any promotions that pertain to them (any time of co-promotion, giveaways, sweepstakes, etc) if such blasts shall become technically possible for CFF to send out, and in good faith agreed.

3.     **Hospitality; Passes; Merchandise**

3.1     Biznisport shall provide to Kadena the following without further consideration or condition:

    3.1.1     Two (2) tickets (next to each other) for each game or match for each international competition in which the Men's National Team competes (including the League of Nations Final Four, World Cup, UEFA European Football Championship).

    3.1.2     Five (5) tickets (next to each other) for each game or match played by the Men's National Team which is not a Home Game (which includes the League of Nations group stage and friendly games/matches).

    3.1.3     Twenty (20) tickets for each Home Game located together in a single block or in such groupings as Kadena may request of Biznisport at least ten (10) days in advance of each such Home Game.  Any tickets shall be in located in the lower level of the venue .

    3.1.4     Two (2) VIP meet & greets annually with players and coaches of the Men's National Team;

    3.1.5     Minimum of 1 set of player kit merchandise (however, either jersey, or warmup shirt, or pants) per game/match from the CFF official webshop;

    3.1.6     5 pieces of autographed merchandise annually from the CFF official webshop, which autographs will be from players of  the Men's National Team by jersey sale rankings for such season or calendar year or by such other player as Kadena requests if available; and

    3.1.7     Other merchandise or fan gear as my reasonably requested by Kadena, for promotions or reward program which is or may be made in partnership with CFF, Biznisport or the Men's National Team.

4.     **Other Rights**

Docusign Envelope ID: 1B33FE65-83AC-4C86-9A23-BCB5F5C193A3

4.1    The right to create advertisements during the Term using the Footage (the length, content and style of any such advertisements to be subject to Biznisport's approval in writing).

4.2    Biznisport shall support Kadena's PR activities as and when reasonably requested by Kadena .

4.3    The right to use, on a royalty-free basis, during the Term the CFF Mark and imagery provided by Biznisport and CFF of the Men's National Team to create Promotional Materials relating to Kadena's sponsorship with CFF.

4.4    The right to be introduced to other CFF sponsors or partners in order to discuss potential cross over marketing opportunities.

### Schedule 5
### Migration of Vatreni Tokens

No later than March 15, 2025, Biznisport shall ensure that all existing Vatreni Tokens are migrated to Kadena Blockchain (the "**Migration**"). The method and manner of such migration shall be primarily determined and handled by Biznisport, subject to Kadena's approval and review of such migration and all elements thereof. Biznisport shall be responsible for obtaining the consent/approval/signature of any other Person(s) that may be required to migrate any token listing or otherwise effectuate the Migration. Biznisport, or such Third Party as they determine, shall be solely responsible for the continuing administration of any Vatreni Token-related system during the Term and thereafter. Once Biznisport believes they have completed the Migration, Biznisport shall promptly notify Kadena in writing of the same and provide such back up information as Kadena may reasonably request. Kadena shall notify Biznisport whether it concurs, in its sole and absolute discretion, with Biznisport's assessment that the Migration has been completed within ten (10) business days of Kadena's receipt of Biznisport's request or may specify the additional work Kadena thinks is necessary in order for Biznisport to complete the Migration.

## Schedule 6
## The Platform

**Functional Requirements**. The Platform will include a Marmalade-based marketplace that enables end users to buy and sell unique NFTs, including digital collectibles, merchandise with NFC chips tied to NFTs, and Home Game tickets. The functional requirements for the Platform include:

- Develop smart contracts (using Pact or Marmalade protocols, as applicable, and following Marmalade's code standards, as applicable) to permit:

  o End users to Buy, Sell or Transfer NFTs on the Platform by using Kadena Marmalade's code standards

    ▪ "Buy, Sell (through marmalade's 'marmalade-v2.ledger.sale' method)".

    ▪ "Transfer (enforced/controlled by either a custom policy, or marmalade's 'marmalade-v2.guard-policy-v1')"

  o Biznisport to mint NFTs (including CFF NFTs)

  o End users to authenticate (via NFTs) merchandise with implanted NFC Chips

  o Adding to the Platform the ability to transfer NFTs representing (or attached to) tickets, the specifics of which shall be determined based on good faith discussion between the Parties.

- Migrate the existing Magic SDK implementation from Polygon to Kadena. Utilizing Magic's Spirekey implementation

Once Biznisport believes they have completed the Platform (including all functional and nonfunctional requirements thereof) and prior to the Public Launch, Biznisport shall promptly notify Kadena in writing of the same and provide such back up information as Kadena may reasonably request. Kadena shall notify Biznisport whether it concurs, in its sole and absolute discretion, with Biznisport's assessment that the Platform has been completed within fifteen (15) business days of Kadena's receipt of Biznisport's request or may specify the additional work Kadena thinks is necessary in order for Biznisport to complete the Platform and initiate the Public Launch.

**General Requirements**.

1. The intentional, public launch of the Platform (the "**Public Launch**") must occur not later than May 1, 2025

2. The Platform will be written in the Pact smart contract language and will utilize and follow Kadena's design principles for smart contracts, frontend and backend.

3. All code and documentation for the Platform must be fully typed and code conventions must be adhered to at all times.

4. All **s**mart contracts related to or a part of the Platform must be reviewed and approved by at least one Pact developer from Kadena prior to the Public Launch.

5. If the Parties mutually determine that modifications to the scope or deliverables of the Platform need to be made, they will work together in good faith as to such modifications and provide a substitute Schedule 6 which will supercede this Schedule 6.

6. Testing
   i. Automated testing must be utilized
   ii. Smart contracts must be fully tested through REPL through individual tests (automated testing) for each contract. Front-end and back-end code must have

a minimum of 80% test coverage. The Platform must be stress-tested to support high-network traffic

7. Hosting & Testing Environment

    i.   Biznisport will provision, setup and maintain their own server, node and API infrastructure necessary for the operation of the Platform and will not rely on endpoints hosted by Kadena including api.chainweb.com

Docusign Envelope ID: 1B33FE65-83AC-4C86-9A23-BCB5F5C193A3

**Schedule 7**
**Sponsorship Fee**

1.      **Sponsorship Fee**

1.1     Subject to Sections 8.3 and 8.5 of the Agreement, the sponsorship fee (the "**Sponsorship Fee**") shall be $2,500,000 (Two Million Five Hundred Thousand US Dollars) payable as follows:

      1.1.1    $400,000 payable within ten (10) business days of the Effective  Date;

      1.1.2    $300,000 payable on or before July 1, 2025;

      1.1.3    $400,000 payable on or before January 1, 2026;

      1.1.4    $300,000 payable on or before July 1, 2026;

      1.1.5    $400,000 payable on or before January 1, 2027;

      1.1.6    $300,000 payable on or before July 1, 2027; and

      1.1.7    $400,000 payable on or before January 1, 2028.

1.2     Biznisport shall provide Kadena with an invoice setting forth the portion of the Sponsorship Fee which is due, (i) with respect to Paragraph 1.1.1 above, on or immediately after the Effective Date and (ii) with respect to each of Paragraphs 1.1.2 through 1.1.7, at least thirty (30) days prior to the date in which such installment of the Sponsorship Fee is payable. For the avoidance of doubt, no amount shall be deemed due by Kadena until at least thirty (30) days after Kadena's receipt of an invoice from Biznisport for the applicable portion of the Sponsorship Fee.

1.3     If Biznisport fails to complete the Public Launch and the Migration (a) by June 1, 2025, the second installment of the Sponsorship Fee shall automatically be reduced by $100,000 and (b) by July 1, 2025, the second installment of the Sponsorship Fee shall be automatically reduced by $100,000 (for an aggregate total reduction of the second installment of the Sponsorship Fee of $200,000). Such reduction shall be in addition to any other rights and remedies available, whether under or pursuant to this Agreement or at law or in equity, to Kadena for any default by Biznisport under this Agreement or otherwise.

**Schedule 8**
**Kadena Marks**

The following marks as well as any future logo or mark that Kadena uses in the ordinary course of business and is reasonable acceptable to Biznisport and CFF.







**Schedule 9**

**CFF Approval**

The form and substance of the CFF Approval shall be reasonably acceptable to Kadena and include the following agreements or confirmations from CFF:

(i)   that the Master Agreement is in full force and effect without default or violation by Biznisport

(ii)  the grant of the Kadena Rights (including as to use of CFF Marks, Footage and name, likeness and image of players, coaches and managers of the Men's National Team) fall within the Biznisport's authority or rights under the Master Agreement and rights held by CFF during the Term and the Renewal Term and will not violate or conflict with the rights granted by CFF to any Person;

(iii) during the Term or any applicable Renewal Term, CFF will not grant rights or designations to any Person that conflict or are inconsistent with the Kadena Rights;

(iv) confirms that if Kadena exercises its right to makes the payments to CFF under Section 8.7 of the Agreement, CFF will abide by, assume and be bound by Sections 1, 3 (exclusive of Sections 3.3 and 3.4), 6.2, 6.3, 6.4, 7, 8, 9, 11 and 13 through 21 and Schedules 3 and 4 of this Agreement including Biznisport's obligations thereunder *mutandis mutatis*; and

(v)  unless the CFF Approval is addressed to Kadena, specifically permits Kadena to rely upon of the CFF Approval as if it was addressed to Kadena.